**LOCAL 703, INTERNATIONAL BROTH-ERHOOD OF TEAMSTERS,**
**Plaintiff-Appellant,**

v.

**KENNICOTT BROS. CO.,**
**Defendant-Appellee.**

No. 83–3315.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 6, 1984.

Decided Aug. 23, 1985.

Rehearing and Rehearing In Banc
Denied Sept. 25, 1985.

William F. Lennon, Chicago, Ill., for plaintiff-appellant.

Jill A. Goldy, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, Chief Judge, and BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

This appeal concerns the arbitrability of two post-contract grievances. We have examined these grievances in light of the Supreme Court's discussion of post-contract arbitrability and the facts in *Nolde Brothers v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), and have concluded, with the district court, that these grievances are not arbitrable.

### I.

Kennicott is engaged in the wholesale florist business with its main shop and central office in Chicago and another shop in Aurora, Illinois. The Union, a Teamster Local, represents a number of Kennicott workers.[1] Prior to October 1, 1981, Kennicott and the Union had been parties to successive collective-bargaining agreements for over thirty years. On September 21, 1981 their most recent collective-bargaining agreement ("Agreement") expired; however, upon expiration the parties were negotiating a replacement agreement and thus, under the terms of Article Twenty-nine of the Agreement, the Agreement was extended until October 30, 1981 or until the negotiations broke off, whichever came first.[2] Negotiations did break off sometime in October or November, 1981 and the parties have neither entered a supplemental agreement to extend the Agreement's life beyond the Article Twenty-nine extension period nor entered a replacement agreement.

On April 19, 1982, between six and seven months after the Article Twenty-nine extension period ended, Kennicott discharged Richard Wagner, a driver in its Aurora shop.[3] Sometime subsequent to Wagner's discharge Kennicott granted certain of its employees a 65 cents per-hour pay raise retroactive to October 1, 1981. Wagner did not receive this retroactive pay raise for the time he worked prior to discharge.

On April 22, 1981, the Union requested arbitration of Wagner's discharge and, on June 30, 1982, it requested arbitration of Kennicott's failure to give Wagner the retroactive pay increase. Kennicott refused to arbitrate either dispute. The Union

---

1. The Union's full name is: "Produce, Fresh & Frozen Fruits & Vegetables, Fish, Butter, Eggs, Cheese, Poultry, Florist, Nursery, Landscape & Allied Employees, Drivers, Chauffeurs, Warehousemen & Helpers Union, Chicago and Vicinity, Illinois, Local 703, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, and Warehousemen and Helpers of America."

2.         Article Twenty-nine.

   Section 1.
   This Agreement shall become effective October 1, 1978, and continue in full force and effect until and including September 30, 1981.... This Agreement shall continue in full force and effect until replaced by a new, signed agreement should negotiations extend beyond the expiration date of this Agreement. In no event, however, shall such temporary agreement exceed a period in excess of thirty (30) days from the final expiration date of this Agreement.

3. We cannot be precise on the amount of time between expiration and discharge because the record does not disclose the exact date that the Article Twenty-nine extension period ended. All we know from the record is that the extension period ended sometime between October 1 and October 30, that is, when negotiations on a replacement agreement broke off or on October 30, 1981, whichever came first.

brought suit pursuant to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. 185(a) (West 1978), seeking a court order compelling Kennicott to arbitrate under Article Three, the arbitration clause of the expired Agreement.[4] Kennicott moved for summary judgment on two grounds: (1) that the Agreement containing the arbitration clause under which the Union sought to arbitrate had expired, and with it Kennicott's obligation to arbitrate disputes; and (2) that Wagner, an employee in the Aurora shop, was never a member of the bargaining unit covered by the expired Agreement which only covered Chicago shop employees.

Relying solely on Kennicott's first ground and without addressing the merits of the second ground Judge Roszkowski held the grievances non-arbitrable and granted Kennicott summary judgment. The Union appealed to this court. We affirm.

## II.

The Supreme Court's landmark *Nolde Brothers v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) decision guides our analysis of the arbitrability of Wagner's two-post contract grievances. The *Nolde* Court instructed that the ultimate issue in post-contract grievance cases, as in all section 301 suits to compel arbitration, is the intention of the parties regarding arbitrability, since arbitration is a creature of the collective-bargaining agreement and a party cannot be compelled to arbitrate any matter that he has not agreed to arbitrate. *Id.* at 250–51, 97 S.Ct. at 1071. Looking at the broad arbitration clause (providing for arbitration of "all grievances"), the lack of any express language in the contract that the parties intended post-contract disputes to be non-arbitrable, the short time (four days) between the expiration of the contract and the grievance, and the strong federal policy favoring arbitration of labor disputes, the Court found that the parties intended the post-contract severance-pay issue to be arbitrated and accordingly ordered arbitration.[5]

With the law and facts of *Nolde* as a guide we now consider the language of the Agreement and the facts surrounding the Union's two grievances to determine whether the parties intended that these post-contract grievances be arbitrated or rather resolved in the courts.

As was true with the *Nolde* contract, there is no clear indication from the language of this Agreement what the parties intended regarding the arbitrability of post-contract disputes. The arbitration clause provides for arbitrability of "all disputes and grievances *arising out of the Agreement*" (emphasis added); that is somewhat more limited language than the "all grievances" language found in the *Nolde* arbitration clause. We hesitate, however, to make too much of this distinction because the "arising out of" language does not speak directly to the parties' intention regarding the arbitrability of *post*-contract

---

4. Article Three

[T]here shall be no strike by the Union or its members and no lockout by the Employer during the life of this Agreement and … all disputes and grievances arising out of the Agreement shall be adjusted in the following manner:
 FIRST STEP: Between the employee and his superintendent or Employer, and upon failure to settle the issue, then
 SECOND STEP: Between the Employer or his representative, and the representative of the Union. A decision reached between them shall be binding upon all parties hereto. If the issue is not resolved to the satisfaction of both parties after utilization of this level, then

THIRD STEP: The issue shall be reduced to writing and submitted to a Board of Arbitration…. Any decision reached by a majority of such Arbitration Board shall be final and binding upon all parties hereto.

5. The last footnote of the *Nolde* opinion leaves open the question of the arbitrator's authority to consider the arbitrability issue following referral. Therefore it is unclear whether the *Nolde* court definitively decided the arbitrability issue, or merely found arbitrability arguable on the face of the contract and therefore sent the arbitrability issue to the arbitrator for a definitive decision. *See Communications Workers of America v. Western Electric Co.*, 751 F.2d 203, 206 (7th Cir.1984).

disputes. If the parties intended that no post-contract disputes be arbitrable they could have stated the intention much more clearly, as did the parties in *General Warehousemen and Employees Union Local No. 636 v. J.C. Penney Co.*, 484 F.Supp. 130, 132 n. 1 & 138 (W.D.Wis.1980), where the collective-bargaining agreement provided that only disputes arising "under and *during the term*" (emphasis added) of the agreement would be arbitrable. We thus conclude that the arbitration clause, although somewhat more limited than in *Nolde*, does not give a clear indication one way or the other of the parties' intention regarding the arbitrability of post-contract disputes. *But see Rochdale Village, Inc. v. Public Service Employees Union Local No. 80*, 605 F.2d 1290, 1295 n. 6 (2d Cir. 1979) (distinguishing *Nolde* on ground that arbitration clause limited arbitration to grievances arising "under" the agreement).

Kennicott also points to language in the expiration clause of the Agreement (Article Twenty-nine) as evidence of the parties' intent to cut off arbitration rights and obligations upon expiration. That clause reads:

> This Agreement shall continue in full force and effect until replaced by a new, signed agreement should negotiations extend beyond the expiration date of this Agreement. In no event, however, shall such temporary agreement exceed a period in excess of thirty (30) days from the final expiration date of this Agreement.

We disagree with Kennicott that this clause and, in particular, the use of the term "final" in the last sentence suggest that the parties intended to have all contract rights, including arbitration rights, expire with the contract. The expiration clause merely tells us the parties' intention regarding the Agreement's expiration; but on that issue all parties agree: the Agreement expired whenever replacement negotiations broke off, but in no event later than October 31, 1981. The expiration clause does not, however, give us a clue about the parties' intention regarding the pertinent issue, which is, whether the arbitration clause *survives* expiration and, if so, which post-contract grievances are arbitrable.

We find that the language of this Agreement does not clearly evince the parties' intention regarding the arbitrability of post-contract disputes and to that extent this case is indistinguishable from *Nolde*. We therefore disagree with Kennicott and the district court, both of whom view the contract language as manifesting an intention that no post-contract dispute is arbitrable. Nonetheless, we affirm the district court's refusal to order arbitration because we believe that *Nolde* is distinguishable on other grounds: the length of time between expiration of the contract and the events triggering the grievances.

Whereas in *Nolde* the event triggering the severance-pay grievance (the closing of the plant) occurred four days after the expiration of the contract, here the events triggering the grievances (the discharge and the granting of retroactive pay increases) occurred more than six months after the Agreement expired. Although it may be reasonable to presume that parties intend to arbitrate grievances arising shortly after the expiration of a contract, the presumption weakens as the time between expiration and grievance events increases. A contrary holding would mean that parties to a collective-bargaining agreement would be presumed to intend that any dispute arising between them years or even decades after the expiration of the agreement would be arbitrable. We do not read the *Nolde* presumption of arbitrability to persist indefinitely after expiration. Indeed the *Nolde* court itself acknowledged the potential importance of the time factor when it expressly reserved judgment on "the arbitrability of post-termination contractual claims which, unlike the [claim in *Nolde*], are not asserted within a reasonable time after the contract's expiration." 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8; *see also United Mine Workers of America v. Jericol Mining, Inc.*, 492 F.Supp. 132 (E.D.Ky.1980) (reading *Nolde* to instruct that the length of time between expiration and filing of grievance is one factor to

consider in determining whether to order post-contract arbitration). *But see* Leonard, *Post-contractual Arbitrability After Nolde Brothers: A Problem of Conceptual Clarity,* 28 N.Y.L.Sch.L.Rev. 257, 283 (1983) (criticizing *Jericol Mining's* reading of *Nolde* ). We do not consider six months to be a reasonable time and we therefore hold that these grievances are not arbitrable.

In sum, we hold that although the absence of express language in the Agreement evincing an intent to cut off all arbitration with the contract's expiration may suggest that some post-contract grievances are arbitrable under this Agreement, these particular grievances are not arbitrable, triggered as they were more than six months after the Agreement's expiration. The significantly longer period in this case than in *Nolde* between expiration of the Agreement and the events triggering the grievances eviscerates the *Nolde* presumption of arbitrability and distinguishes this case. We therefore AFFIRM the district court order refusing to compel Kennicott to arbitrate the grievances.