794 F.2d 1222
 123 L.R.R.M. (BNA) 2488, 104 Lab.Cas. P 11,983
 GRAPHIC COMMUNICATIONS UNION, CHICAGO PAPER HANDLERS' &
ELECTROTYPERS' LOCAL NO. 2, Plaintiff-Appellee,
v.
CHICAGO TRIBUNE COMPANY and Chicago Newspaper Publishers'
Association, Defendants-Appellants.
 No. 85-2383.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 7, 1986.
Decided July 2, 1986.
 
 Richard L. Marcus, Reuben & Proctor, Chicago, Ill., for defendants-appellants.
 Marvin Gittler, Asher Pavalon Gittler & Greenfield, Ltd., Chicago, Ill., for plaintiff-appellee.
 Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 Defendants-appellants Chicago Tribune Co. (the "Tribune") and Chicago Newspaper Publishers' Association (the "CNPA") appeal from the district court's grant of summary judgment in favor of plaintiff-appellee Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 (the "Union"). Pursuant to section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, the court ordered the appellants to arbitrate a dispute over a change in hiring practices implemented by the Tribune after the collective bargaining agreement between the parties had expired. We reverse the decision of the district court because we find that, pursuant to the agreement, the parties did not intend to arbitrate this dispute in the post-contract period.
 
 I.
 
 2
 The following facts are undisputed by the parties. The Tribune publishes a newspaper and the Union represents all paper handlers employed by the Tribune in its pressrooms and warehouses. The CNPA is responsible for negotiating collective bargaining agreements on behalf of the Tribune. The Union and the CNPA executed a collective bargaining agreement which was effective from September 3, 1981, to September 3, 1984. The agreement describes in some detail matters relating to wages, hours and working conditions, but is silent with respect to the issue of hiring procedures.
 
 
 3
 The agreement also contains three arbitration clauses. The first clause is a "speedy arbitration" provision which provides for "grievance adjustment, conciliation or arbitration" of differences that arise between the parties. Pending the resolution of disputes covered by this clause, the Union agrees to continue work "without interruption" and the Tribune agrees to maintain the status quo with respect to the scale, hours and "mutually agreed to working conditions" so long as "such working conditions are set forth in the contract or are the subject matter of agreements arrived at and reviewed by the parties."
 
 
 4
 The second arbitration clause contained in the agreement is the Joint Standing Committee clause. This clause provides for the establishment of a Joint Standing Committee consisting of two representatives from the CNPA and two representatives from the Union. Under the terms of the agreement, "all questions, except those qualifying for adjudication under the 'speedy arbitration' " clause "which may arise as to the construction" of the agreement "or any alleged violations thereof, which cannot be settled otherwise," should be referred to the Joint Standing Committee for resolution. If the Committee is unable to reach a decision after ten days, the agreement provides that the dispute "be settled in accordance with the provisions of the International Arbitration Agreement between the American Newspaper Publishers' Association and the International Printing and Graphic Communications Union...."
 
 
 5
 The third arbitration clause contained in the agreement is the interest arbitration clause. Under the terms of this clause, the agreement was to be effective until September 3, 1984, "unless changed by mutual consent" of the parties. The interest arbitration clause provides that either party may propose an amendment to the agreement by notifying the other party of the desired changes prior to the expiration date of the contract. If this notice is not given, "it shall be construed as a renewal of [the agreement] which shall run from year to year until changed in negotiations initiated sixty (60) days prior to the expiration date in any succeeding year." The clause also provides that "[i]f agreement proves impossible in negotiations for amendments ... or in the making of a new contract, the difference shall be arbitrated."
 
 
 6
 The parties began negotiations toward a new contract in August 1984. On September 5, 1984, two days after the expiration of the collective bargaining agreement, the Tribune notified the Union that it was going to discontinue its use of the Union's callroom to hire "extras." For the forty years prior to the expiration of the agreement, the Tribune, when it needed extra paper handlers in addition to its full-time staff, had hired temporary employees through the Union callroom on a day-to-day basis. After expiration of the agreement, however, the Tribune stated that it was terminating use of this procedure to ensure that its hiring would be nondiscriminatory. In a letter to the Union, the Tribune expressed concern with respect to what it perceived to be an increase in the number of lawsuits challenging hiring practices as discriminatory and its view that employers who hire through union callrooms would not be insulated from liability in the event a union's hiring practices were found to be unlawful. The Tribune also informed the Union that it had recently been named as a defendant in a suit challenging certain hiring practices. However, the Tribune provided no additional information with respect to what type of discrimination was alleged in this suit or whether it involved the Union's callroom hiring practices.
 
 
 7
 The Union protested the Tribune's decision regarding the callroom stating that its use had "been a mutually agreed to working condition from the inception of the collective bargaining relationship between the parties." The Union further noted that pursuant to the agreement the issue should be referred to the Joint Standing Committee for arbitration if informal resolution proved impossible.
 
 
 8
 The Tribune responded by arguing that "there is no contractual requirement" that it utilize the Union's callroom procedure and further advised the Union that the dispute should be referred to the CNPA. The Union subsequently requested that the CNPA go to arbitration to resolve the issue. Both the CNPA and the Tribune refused the Union's demand. On several occasions thereafter, the Union reiterated its demand for arbitration and also notified the CNPA of its desire to have the prevailing conditions preserved until the matter was fully resolved. The Union's demands were refused.
 
 
 9
 On December 21, 1984, the Union filed suit to compel arbitration. In its order of summary judgment, the district court directed the CNPA and the Tribune to begin arbitration pursuant to the expired collective bargaining agreement.[1] The defendants appeal from the court's decision arguing that any duty they might have had to arbitrate the callroom dispute terminated with the expiration of the collective bargaining agreement.[2]
 
 II.
 
 10
 Before reaching the merits of this case, we must first clarify what is at issue. After reviewing the record, it is unclear whether the Union requested arbitration under the speedy arbitration clause or under the Joint Standing Committee clause. In one letter the Union demanded that the dispute be referred to the Joint Standing Committee; in another letter, written by counsel for the Union, arbitration pursuant to the speedy arbitration clause was sought. Although the district court apparently concluded that only the Joint Standing Committee clause was invoked by the Union, it is irrelevant, for our purposes, under which of the two clauses the Union actually sought to compel arbitration. What is significant, however, is the district court's conclusion that the Union expressly chose not to seek arbitration under the interest arbitration clause. Since the Union did not object to this finding below, it is bound by the district court's conclusion.[3] With this in mind, we proceed to an examination of the merits of the district court's decision to compel arbitration.
 
 
 11
 As the trial judge correctly noted, arbitration is the favored means of settling labor disputes and, consequently, a duty to arbitrate should be upheld whenever the collective bargaining agreement can be reasonably interpreted to impose such a duty. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960); John Wiley & Sons v. Livingston, 376 U.S. 543, 550, 84 S.Ct. 909, 914, 11 L.Ed.2d 898 (1964). It is well-established that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Warrior & Gulf Navigation Co., 363 U.S. at 582-83, 80 S.Ct. at 1352-583. Doubts regarding the parties' intent to arbitrate should be "resolved in favor of coverage." Id. at 583, 80 S.Ct. at 1353 (footnote omitted). At the same time, it is equally clear that, since the duty to arbitrate is a contractual obligation, federal courts lack the authority to compel a party to arbitrate in the absence of an agreement to do so. Id. at 582, 80 S.Ct. at 1352; Gateway Coal Co. v. United Mine Workers of America, 414 U.S. 368, 374, 94 S.Ct. 629, 635, 38 L.Ed.2d 583 (1974). "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT & T Technologies, Inc. v. Communications Workers of America, --- U.S. ----, 106 S.Ct. 1415, 1418-20, 89 L.Ed.2d 648 (1986).
 
 
 12
 The question of whether the parties contracted to arbitrate a particular dispute is generally one for judicial determination. The Supreme Court recently noted that, "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." Id. In the present case, there is no indication that the parties intended that an arbitrator, as opposed to a court, determine whether a duty of arbitration is to be imposed. It is up to us, therefore, to examine the collective bargaining agreement and ascertain whether the district court erred in concluding that parties intended to arbitrate grievances such as the post-contract dispute involved here.[4]
 
 
 13
 Although acknowledging that there is a certain degree of logic to the argument that the duty to arbitrate expires with the collective bargaining agreement, the district court nonetheless felt that precedent dictated the opposite conclusion. In ordering post-contract arbitration, the court relied upon the Supreme Court's decision in Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). In Nolde, the Court ordered the parties to arbitrate a dispute over severance pay even though the collective bargaining agreement under which the right for such pay allegedly arose had expired. In so ruling, the Court noted that although the dispute arose after the expiration of the collective bargaining agreement, it nonetheless arose under the contract. Id. at 249, 97 S.Ct. at 1070. Accordingly, the Court held that the severance pay dispute was arbitrable concluding that "in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract." Id. at 253, 97 S.Ct. at 1073.
 
 
 14
 Although Nolde provides that in certain circumstances the presumption of arbitrability may survive into the post-contract period, the Court's decision has not been mechanically applied in all possible situations. For example, in Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co., 771 F.2d 300 (7th Cir.1985), we held that the presumption of arbitrability does not survive where the grievance arises six months after the collective bargaining agreement has expired. Id. at 304. Nolde's post-contract presumption of arbitrability has also been limited to cases in which the grievance arises "under the collective bargaining agreement," although perhaps not ripening "until after it expires." Local 807, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America v. Brink's Inc., 744 F.2d 283, 286 (2d Cir.1984) (emphasis in original). In Brink's, a union sought to arbitrate the employers' refusal to extend recognition of the union as the employees' representative beyond the expiration of the current collective bargaining agreements. The Second Circuit declined to compel arbitration in the post-contract period noting that the alleged obligation to recognize the union did not arise under the terms of the expired agreements, as did the severance pay dispute in Nolde, but rather arose, if at all, under other provisions of federal labor law. Id.
 
 
 15
 We find the present case indistinguishable from Brink's and agree with the Second Circuit that Nolde applies only in cases in which the grievance arises under the expired collective bargaining agreement.[5] See O'Connor Co. v. Carpenters Local Union No. 1408 of the United Brotherhood of Carpenters & Joiners of America, 702 F.2d 824, 825 (9th Cir.1983) (employer has no duty to arbitrate dispute which arose not under expired agreement but under an agreement which employer had not signed); Milwaukee Typographical Union No. 23 v. Madison Newspapers, Inc., 444 F.Supp. 1223, 1226-27 (W.D.Wis.1978) (dispute over employer's decision to implement new conditions of employment not arbitrable where dispute did not arise under terms of expired collective bargaining agreement), aff'd mem., 622 F.2d 590 (7th Cir.1980). Even conceding this point, the Union nonetheless argues that the use of the callroom was in someway a right that accrued under the expired collective bargaining agreement and that therefore the present dispute arises under that agreement. We disagree.
 
 
 16
 In the Tribune's case, the continued use of the callroom represents a future practice of an employer as opposed to an accrued right or obligation that arose under an expired contract and which is owed to the employees. See Oil, Chemical and Atomic Worker's International Union Local No. 4-23 v. American Petrofina Co. of Texas, 586 F.Supp. 643, 647 (E.D.Tex.1984) (noting that courts applying Nolde have compelled arbitration in the post-contract period in two circumstances: (1) "[w]hen a case involves the accrued rights of employees, such as pension benefits or disability payments;" and (2) when "the dispute centers around an event that took place either totally or in part during the term of the contract"), rev'd on other grounds, 759 F.2d 512 (5th Cir.1985) (U.S. appeal pending). In the context of severance pay earned under an expired agreement, it is both logical and reasonable that a dispute with respect to payment of the obligation be resolved in accordance with the terms of the contract, i.e., the source of the obligation. See, e.g., Federated Metals Corp. v. United Steelworkers of America, 648 F.2d 856 (3d Cir.) (requiring post-contract arbitration in accordance with Nolde regarding payment of pension benefits where dispute turns on interpretation of expired agreement), cert. denied, 454 U.S. 1031, 102 S.Ct. 567, 70 L.Ed.2d 474 (1981); United Steelworkers of America v. Fort Pitt Steel Casting Division-Conval-Penn, Inc., 635 F.2d 1071 (3d Cir.1980) (compelling post-contract arbitration with respect to, among other things, severance pay, accrued vacation benefits and insurance benefits), cert. denied, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 843 (1981). Conversely, union recognition clauses and established hiring practices are not obligations due and payable to the employees under the expired collective bargaining agreement, but rather, in the absence of a showing of the parties' intent to arbitrate disputes involving these matters, are subjects for negotiations aimed at reaching a new contract. The employees' rights, in other words, turn on whether certain practices will be incorporated into a new collective bargaining agreement and not on an interpretation of the expired agreement. In such cases, Nolde simply does not apply.[6]
 
 
 17
 Without Nolde's presumption of arbitrability in the post-contract period, we find that the district court erred in compelling arbitration. Since the duty to arbitrate is contractual in nature, we conclude that such a duty, absent circumstances giving rise to the Nolde presumption, will generally terminate with the expiration of the collective bargaining agreement. We recognize that evidence indicating the parties' intent to arbitrate post-contract disputes, even though such disputes do not arise under the expired agreement, may be sufficient to justify a court's order compelling arbitration. Nonetheless, in the instant case no such evidence was adduced to show that the parties intended to arbitrate issues such as the termination of the callroom hiring procedure pursuant to either the speedy arbitration or Joint Standing Committee clauses in the post-contract period. There is, of course, the interest arbitration clause which arguably provides that disputes with respect to a new agreement be arbitrated after the old agreement has expired. See Hotel & Restaurant Employees, and Bartenders Union, Local 703 v. Williams, 752 F.2d 1476, 1479 (9th Cir.1985) (holding that interest arbitration clause survives expiration of collective bargaining agreement). The Union, however, made an express decision not to invoke this clause. Since the provisions upon which the Union relies are silent as to arbitration in the post-contract period, and because we find that the Nolde presumption of post-contract arbitrability is inapplicable here, we conclude that the Tribune and the CNPA were under no duty to arbitrate with respect to the decision to terminate use of the callroom procedure.[7]
 
 III.
 
 18
 For the reasons stated above, the order of the district court compelling arbitration is
 
 
 19
 REVERSED.
 
 
 
 [1]
 The Union also sought attorneys' fees in the district court. The court, however, denied the motion for fees. Since the Union does not contest this denial on appeal, we express no opinion as to the district court's resolution of the issue
 
 
 [2]
 The district court refused to stay its order (reported at 613 F.Supp. 873) compelling arbitration pending appeal. We also denied the defendants' motion for a stay finding that they had failed to make the requisite showing of irreparable harm. Graphic Communications Union, Chicago Paper Handlers' & Electrotypers' Local No. 2 v. Chicago Tribune Co., 779 F.2d 13, 15 (7th Cir.1985)
 
 
 [3]
 It is, of course, axiomatic that arguments not raised below are generally waived on appeal. E.g., Kimberlin v. Department of Treasury, 774 F.2d 204, 207 (7th Cir.1985) (per curiam). In fact, at oral argument, counsel for the Union conceded that the interest arbitration clause was not invoked in this case
 
 
 [4]
 A court's role in this interpretation process is not, however, to rule on the merits of the underlying claim if it determines that the parties intended to arbitrate the dispute. "Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." AT & T Technologies, 54 U.S.L.W. at 4341, 106 S.Ct. at 1418-20
 
 
 [5]
 At oral argument, the Union appeared to argue that our decision in Kennicott stands for the proposition that grievances, although not arising under the expired collective bargaining agreement, may be arbitrable in the post-contract period in accordance with Nolde. The Union's reading of Kennicott overlooks the precise holding in that case. In Kennicott we held that grievances which arise six months after the expiration of the collective bargaining agreement would not be subject to the Nolde presumption of arbitrability. As we noted at the time:
 We do not read the Nolde presumption of arbitrability to persist indefinitely after expiration. Indeed the Nolde court itself acknowledged the potential importance of the time factor when it expressly reserved judgment on the 'arbitrability of post-termination contractual claims which, unlike the [claim in Nolde ], are not asserted within a reasonable time after the contract's expiration.'
 Kennicott, 771 F.2d at 303 (quoting Nolde, 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8).
 Because arbitration was precluded as a result of the time lapse between the expiration of the contract and the occurrence of the grievances, we had no opportunity in Kennicott to rule on whether the grievances had arisen under the expired agreement. Our only comment on this issue was to examine whether the arbitration clause in question clearly negated post-contract arbitration. Kennicott, 771 F.2d at 302-303. Although we concluded that the clause, by its own terms, did not exclude the possibility of post-contract arbitration, our decision made it unnecessary to reach the question of whether the grievances had arisen under the expired agreement.
 
 
 [6]
 Similar to the situation in Brink's, the Tribune's unilateral change of practice prior to reaching a bargaining impasse may violate some provision of federal labor law. See Fort Pitt, 635 F.2d at 1080 (noting that "whether particular conduct constitutes an unfair labor practice is a distinct question from whether [the employer] must arbitrate a grievance resulting from such conduct"). This potential violation does not, however, justify a mechanical application of Nolde to compel arbitration in this case
 
 
 [7]
 The Union also argues that arbitration is mandated here owing to the fact that even after the collective bargaining agreement expired the parties continued to adhere to its terms and conditions. The Union contends, therefore, that the grievance arose under the agreement itself which had remained in effect by the mutual consent of the parties. We find this argument without merit. It is clear that the Tribune, accepting for this purpose the argument of the Union, was no longer adhering to the terms of the expired agreement when it announced the decision to terminate its use of the Union callroom. Contrary to the Union's contention, therefore, the grievance did not arise under the terms of the expired agreement and the Tribune was, accordingly, under no duty to arbitrate the dispute