**INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL AND ORNAMENTAL IRON WORKERS, SHOPMEN'S LOCAL NO. 473, Plaintiff,**

v.

**SR INDUSTRIES CORP., et al., Defendants.**

**No. 88 C 0901.**

United States District Court, N.D. Illinois, E.D.

Jan. 17, 1989.

---

Richard J. Puchalski, Doss, Puchalski & Keenan, Ltd., Chicago, Ill., for plaintiff.

Irving M. Geslewitz, Adams, Fox, Adelstein & Rosen, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

This is a declaratory judgment action brought by a union against the former employer of its members, seeking approximately $23,800 in vacation pay. The union also asserts that two officers of the corporate defendant, Lewis B. Simon and William T. Morgan, are personally liable for the disputed wages. The defendants now move for summary judgment for lack of subject matter jurisdiction, arguing that the union failed to exhaust contractual dispute resolution procedures before filing

suit. However, rather than demand that the union submit to these contractual procedures, the defendants have contended before this Court that the union's previous failure to invoke them constitutes an election of remedies that now makes the contractual procedures unavailable. The Court now denies defendants' motion. Before addressing the merits, the Court will briefly recount how this dispute ended up here.

The parties agree that on June 27, 1984, Local 473 of the International Association of Bridge, Structural and Ornamental Iron Workers entered into a collective bargaining agreement with SR Industries, an Illinois corporation with its principal place of business in Schaumburg, Ill. Although the contract had a stated expiration date of March 15, 1987, it also contained a clause allowing either party to demand renegotiation of wages by filing written notice not less than sixty nor more than ninety days prior to midnight April 30, 1986. However, this wage reopener clause further provided that if it were invoked and negotiations did not result in a new agreement as to wages prior to midnight April 30, 1986, the collective bargaining agreement would expire.

As things turned out, the union did invoke the clause, wage negotiations proved fruitless, and the company announced on May 8, 1986, that it would phase out operations. All but a few production and maintenance employees were discharged by the end of the month, and the last of these employees were let go by Dec. 1. The parties agree that in a meeting on December 9, 1986, the union demanded vacation pay for periods worked by its members during 1986. The company disavowed any such obligation and refused the union's demand.

■ The union responded three days later by notifying the company that it planned to file suit. It followed through on January 7, 1987, by filing a two-count declaratory judgment action in state court against SR Industries and its officers Simon and Morgan, seeking to ground liability in the Illinois Wage Payment and Collection Act, Ill.Rev.Stat. ch. 48, para. 39m–1 *et seq*. SR replied with its own declaratory judgment action in federal district court, where Judge Getzendanner ruled that any rights to vacation pay were created by the collective bargaining agreement, and thus the state law wage collection claims were preempted by § 301 of the Taft–Hartley Act, 29 U.S.C. § 185. *SR Industries Corp. v. Local No. 473*, 87 C 2370 (N.D.Ill. Sept. 24, 1987) [1987 WL 17818].[1] SR then moved in state court to dismiss the union's complaint. Instead, the state court granted the union leave to file an amended complaint that made reference to Judge Getzendanner's decision. The company promptly removed the action to this Court.

■ The company's argument for summary judgment is straightforward. The collective bargaining agreement, which governed the claims for vacation pay, contained a multistep grievance procedure culminating in binding arbitration. The company contends that the union did not invoke that grievance procedure, thus failing to exhaust its contractual remedies and forfeiting federal jurisdiction under § 301. For this argument, the company cites *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), *Clayton v. Automobile Workers*, 451 U.S. 679, 686–89, 101 S.Ct. 2088, 2093–95, 68 L.Ed.2d 538 (1981), and *Republic Steel v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965).[2]

Those cases, however, are distinguishable, since each involved a continuing employment relationship subject to an extant

---

1. In their motion for summary judgment, the defendants argue that the claims against defendants Morgan and Simon, though predicated on the Illinois wage collection statute, are preempted by the Taft–Hartley Act. This Court agrees that Judge Getzendanner's decision is res judicata of this issue. However, since their motion for summary judgment involves the same jurisdictional argument as the corporate defendant, this Court's denial of summary judgment applies to their motion as well.

2. In their reply memorandum, the defendants also cite *United Paperworkers v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), but failure to exhaust was not an issue in that case.

collective bargaining agreement, and the failure of an individual union member to follow contractual dispute resolution procedures or internal union procedures before filing suit. *See* II C. Morris, *The Developing Labor Law*, at 1294–1304 (2d ed. 1983). In this case, by contrast, the collective bargaining agreement had expired[3] and all of the employees had been terminated before the company unequivocally denied any obligation to pay the disputed wages. Although the company contends that the union should have followed the grievance resolution procedure provided in the contract, the union clearly could not have followed all of the grievance procedures mandated under the contract as written. For example, the initial stage of the procedure requires discussion among the complaining employee, a shop steward and a foreman. But by the time the company and the union had reached loggerheads on the vacation pay issue, there were no longer any employees; hence, there was no shop steward or foreman.

The Court grants that the exhaustion requirement has been held to apply to the union itself as well as to the union's members, although the defendants did not cite any such cases. *See United Slate, Tile & Composition Roofers v. G & M Roofing*, 732 F.2d 495 (6th Cir.1984); *National Post Office Mail Handlers v. U.S. Postal Service*, 594 F.2d 988 (4th Cir.1979). The situation in these cases, however, was analogous to the cases involving individual members, since each involved an existing collective bargaining agreement and continuing employment relationship. In short, defendants have not cited a case in which exhaustion was required in circumstances similar to those presented in this case, and the Court is unaware of any.

The exhaustion requirement is intended to encourage the parties to resort to existing contractual dispute resolution procedures, thus furthering the national labor policy favoring the private resolution of disputes in the context of continuing collective bargaining relationships. *See Republic Steel*, 379 U.S. at 653, 85 S.Ct. at 616 ("Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract."); *Clayton*, 451 U.S. at 686–87, 101 S.Ct. at 2094 ("The rule established by *Republic Steel* was thus intended to protect the integrity of the collective-bargaining process and to further that aspect of national labor policy that encourages private rather than judicial resolution of disputes arising over the interpretation and application of collective-bargaining agreements."). Therefore, the Court doubts that the exhaustion requirement applies when the collective bargaining agreement has expired and all employees have been discharged, since there is no longer an existing bargaining relationship to protect. Accordingly, in the absence of more persuasive authority presented by the defendants' to support their argument, the Court concludes that exhaustion was not required under the circumstances of this case.[4]

Moreover, even assuming that exhaustion were required, the Court concludes that plaintiff sufficiently has demonstrated that resort to contractual procedures would have been futile, thus bringing its behavior within the recognized futility

---

3. On brief, the union argues that "[w]hether that agreement is still in force and effect is an issue in dispute between the parties." Response, at 3. However, given the union's factual concessions in the parties' local rule 12(e) statements, the Court concludes that the collective bargaining agreement expired as of midnight April 30, 1986. *Cf. SR Industries Corp. v. Local No. 473*, 87 C 2370, slip op. at 2 (N.D.Ill. Sept. 24, 1987).

4. Both parties have taken positions inconsistent with this reasoning. The union, for example, appears to argue that the contract did not expire even though no new agreement was reached as to wages by the contractual deadline. Response, at 3. Moreover, it sought to process grievances under the terms of the agreement after the contract expired as late as October 1986, maintaining that the contract still governed their disputes. Pl.Ex. 7. The company, on the other hand, previously has taken the position that the agreement expired on April 30, 1986. *See* Plaintiff's Exhibit 6 (Letter to Richard Carlson dated Sept. 19, 1986). Nevertheless, the company now argues that the union was required to resort to grievance procedures that were no longer existent.

exception to the exhaustion requirement.[5] *See Glover v. St. Louis–San Francisco Ry. Co.,* 393 U.S. 324, 329–330, 89 S.Ct. 548, 551–552, 21 L.Ed.2d 519 (1969) ("[T]he exhaustion requirement is subject to a number of exceptions for the variety of situations in which doctrinaire application of the exhaustion rule would defeat the overall purposes of federal labor relations policy."). *See also United Slate, Tile & Composition Roofers v. G & M Roofing,* 732 F.2d 495, 501 (6th Cir.1984); *National Post Office Mail Handlers v. U.S. Postal Service,* 594 F.2d 988, 991 (4th Cir.1979); *Protective Workers v. Ford Motor Co.,* 223 F.2d 49, 51 (7th Cir.1955).

Richard Carlson, the union's business agent, states by affidavit that a May 1986 meeting between himself and management (specifically, defendants Morgan and Simon and Nick T. Sangolis, a company negotiator) resulted in a "verbal agreement" to award vacation pay allegedly accrued up to the date of the employees' termination. *See* Plaintiff's Exhibit 1. The Union claims this understanding was confirmed in a memorandum to all employees by defendants Morgan and Simon dated May 9, 1986. *See* Pl.Ex. 4. Carlson then states that he met again with management concerning this issue in June and July 1986, but no payments were made. However, Carlson further attests that the understanding that vacation pay would be made was confirmed by a letter from Sangolis. *See* Pl.Ex. 5.[6]

Carlson goes on to state that he attempted to invoke the grievance procedure "concerning certain disputes that [the union] had with SR Industries. On or about September 24, 1986, I received a letter from SR Industries, indicating that it would not arbitrate any grievances with Local 473 because the collective bargaining agreement had expired." Pl.Ex. 1. The letter states in relevant part: "The grievance is not arbitrable. All issues raised occurred after the collective bargaining agreement expired by the terms of [the wage reopener clause]." Pl.Ex. 6. On brief, the company explains the letter as follows: "In that letter SR simply stated that the issues raised by *that* particular grievance (which did *not* involve vacation pay) occurred after the collective bargaining agreement had expired.... SR did not state that it would not arbitrate *any* grievance with the Union...." Reply, at 5–6. While Carlson's reading of the letter may be too broad, the Court believes that the letter at a minimum may have led a union business agent and the union's members, unschooled in all of the nuances of federal labor law, to conclude that the company would refuse to arbitrate any claims raised by the union after the expiration of the contract. Furthermore, the letter is susceptible to the even broader conclusion that the company had taken the position that the expiration of the agreement freed it from any obligation to submit to the contractual grievance procedures.

As recounted above, the company discharged the remaining few employees by early December 1986, and denied the union's claim for vacation pay on the Ninth of that month. The Court finds that the factual submissions of the parties show a continuing effort by the union prior to that time to negotiate an understanding with the company regarding the vacation pay issue.[7]

5. The union pleaded both an attempt to exhaust and futility in its amended complaint.

6. The Court emphasizes that it is *not* finding that the plaintiff's exhibits prove that the company agreed to award vacation pay, but merely that they tend to support Carlson's recollection of the events, and insofar as they do, this Court's conclusion that the union has adequately shown futility. For example, the memorandum to employees, Pl.Ex. 4, provides in relevant part: "Some of the items discussed and/or negotiated with the union were: ... 2) Earned vacation for the past year which has not been taken will be paid to the appropriate employees

within one week after layoff." The subsequent letter from Sangolis describes the memorandum as follows: "When we met on May 8, 1986 with you and your bargaining committee, we discussed and agreed upon the effects of the shutdown. We then drafted the May 9 notice to all employees. This notice formally announced the shutdown as well as the items we had discussed and agreed upon."

7. This evidence demonstrates to the Court that the union's conduct satisfied the purpose of the grievance procedures—negotiation with the company concerning employment disputes—if not the letter of the contract.

Given the evidence presented by the parties, the Court believes that any attempt to invoke the contractual procedures would have been futile by the time that the company had made clear its refusal to meet the union demands regarding vacation pay. In this regard, the Court also observes that after the union notified the company on December 12, 1986, of its plans to sue, the company, had it been willing to submit to contractual grievance procedures, could have demanded that the union follow the same. However, the company has presented no evidence that it requested that the union arbitrate the dispute, although the company has had ample opportunity to make such a showing. The Court believes that this further demonstrates the futility of the union making a demand for arbitration at that time.

Therefore, even assuming that the union was under an obligation to follow the grievance procedures contained in its last collective bargaining agreement, the Court concludes that the factual submissions made by the union—and unrebutted by any factual submissions of the company—demonstrate that "the Company's attitude in this suit ... made it obvious that pursuit of the grievance procedure would have availed [plaintiffs] nothing." *Protective Workers v. Ford Motor Co.*, 223 F.2d 49, 51 (7th Cir.1955). Accordingly, the Court concludes that the union would prevail on the futility exception to the exhaustion requirement.

■ All of which leads this Court to the final problem posed by this case. As Judge Getzendanner held, any right to vacation pay arose under the terms of the collective bargaining agreement. Controlling precedent dictates that when wage claims arise under the terms of a collective bargaining agreement, there is a strong presumption that the claims are subject to arbitration, even though the agreement expired before the dispute arose. *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1976). "[W]here the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication." *Id.* at 255, 97 S.Ct. at 1074.[8] The Court finds no such express negation or clear implication here. Accordingly, the Court concludes that the vacation pay claim is subject to the *Nolde* presumption of arbitrability.

■ In a hearing before this Court on December 21, 1988, and on brief, the union has indicated its willingness to arbitrate the vacation pay issue if the Court finds it arbitrable. Counsel for the defendants, on the other hand, has stated to the Court his

---

8. The Seventh Circuit's refinement of *Nolde* is not to the contrary. *See Local 703, Int'l Brotherhood of Teamsters v. Kennicott Bros. Co.*, 771 F.2d 300 (7th Cir.1985). In *Kennicott*, the events that triggered the grievance—the discharge of an employee and the failure to grant him a share of a retroactive pay increase declared after his discharge—occurred more than six months after the contract expired. Thus, the dispute did not arise under the terms of the contract, since the retroactive pay raise was not granted *pursuant to* a collective bargaining agreement. The Seventh Circuit subsequently has indicated that the proper distinction between *Nolde* and *Kennicott* is between claims arising *under* the terms of a collective bargaining agreement, although not ripening until after the agreement has expired, and claims that do not arise under the terms collective bargaining agreement. *See Graphic Communications Union v. Chicago Tribune*, 794 F.2d 1222, 1226 (7th Cir.1986). *See UAW v. Young Radiator Co.*, No 87 C 4454 (N.D.Ill. June 10, 1988) [1988 WL 64117].

Even if *Kennicott* is read to hold that any grievance asserted more than six months after the expiration of the contract is no longer subject to the *Nolde* presumption of arbitrability, *Kennicott* also should be read as limited to cases where the claims potentially giving rise to grievances were not timely asserted after contract expiration. *See* 771 F.2d at 303 (*Nolde* reserved judgment on "'the arbitrability of post-termination contractual claims which, unlike the [claim in *Nolde* ], are not asserted within a reasonable time after the contract's expiration.'") (quoting *Nolde,* 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8). In this case, the union asserted its rights to vacation pay and began discussing the issue with the company shortly after the contract expired. In any event, neither party disputes the applicability of the *Nolde* presumption to this case. The union has so represented in a hearing before this Court, and the company has so represented on brief. *See* Reply, at 8 (citing *Nolde* ).

belief that any claim for arbitration at this point is time-barred. But this is the wrong forum for defendants to raise that argument. Whether the union has complied sufficiently with contractual prerequisites to arbitration or otherwise waived its right to arbitrate the dispute is a question for the arbitrator, not the Court. *See Beer Workers Local 744 v. Metropolitan Distributors, Inc.,* 763 F.2d 300 (7th Cir.1985).[9]

If the union seeks to compel arbitration of the claim, the Court requires that it file a motion to compel arbitration, together with a proposed amended complaint, by February 6, 1989.[10]

Therefore, the Court now denies defendants' motion for summary judgment for the reasons stated in the foregoing opinion. Plaintiff is granted leave to file its motion to compel arbitration, together with a proposed amended complaint, by February 6, 1989. A status hearing is ordered for 9 a.m. February 10, 1989.

**9.** As discussed above in the text, it seems likely that many of the procedures of the collective bargaining agreement can no longer be invoked, since there is no continuing employment relationship through which to process the filing of grievances. However, it would appear to the Court that the parties can simply proceed to apply Section 20 of the agreement, which governs the selection of an arbitrator.

**10.** With respect to the relation back of the amended complaint for purposes of any applicable statute of limitations, see Fed.R.Civ.P. 15(c).