**GOSS GOLDEN WEST SHEET METAL, INC., Petitioner-counter-claim-respondent-Appellant,**

v.

**SHEET METAL WORKERS INTERNATIONAL UNION, LOCAL 104, Respondent-counter-claimant-Appellee.**

**No. 90–15155.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 10, 1991.

Decided May 17, 1991.

---

Stephen Thomas Davenport, Jr., Finkle, Davenport & Barsamian, Walnut Creek, Cal., for petitioner-counter-claim-respondent-appellant.

William J. Flynn, Neyhart, Anderson, Reilly & Freitas, San Francisco, Cal., for respondent-counter-claimant-appellee.

Before WALLACE, Chief Judge, GOODWIN and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Goss Golden West Sheet Metal, Inc. ("Goss") appeals the district court's order confirming two arbitration awards entered against Goss and in favor of appellee Sheet Metal Workers International Union, Local 104 ("the Union"). We affirm.

## I.

Goss seeks to vacate two labor arbitration awards issued against it. The first award, referred to as the "DeMatteis Award," stemmed from a May 23, 1988 decision by the Local Joint Adjustment Board ("LJAB"), holding that Goss employed Ronald DeMatteis from June 27, 1978 to May 23, 1986 to perform work covered by its collective bargaining agreements without informing the Union of De-Matteis' employment and without making appropriate benefit trust fund contributions on DeMatteis' behalf. The second award, referred to as the "Commercial Jobs Award," stemmed from a June 16, 1988 decision by the LJAB holding that Goss improperly paid residential wage rates rather than building trades wage rates on fourteen commercial projects performed during the period from July 1983 through October 1987.

On October 19, 1988, Goss filed in district court a Petition to Vacate Arbitration Awards. The Union responded on November 10, 1988 by filing an Answer to Petition to Vacate Arbitration Awards and Counterpetition to Confirm and Enforce Arbitration Awards.[1] On motion for summary judgment, the district court granted the Union's counterpetition and denied Goss' petition to vacate.

## II.

On appeal, Goss argues that the LJAB's awards were improper on a number of grounds that required the district court to vacate them. We disagree.

## A.

■ Goss first challenges the authority of the LJAB to resolve the disputes before it on the ground that it was not properly convened. According to Goss, the LJAB was not composed as required by section 2 of the grievance procedures in the collective bargaining agreement. That section provides:

The Board shall consist of an equal number of representatives of the Union and of the Local Employers' Association and both sides shall cast an equal number of votes at each meeting.

1986–1989 Agreement, art. X, § 2. Apparently, the LJAB originally was to be comprised of four union members and four employers' association members. However, one of the scheduled employers' association members was absent. Rather than reconvene, the panel determined that the remaining members would proceed to hear the dispute, but that one union member would not vote. Ultimately, the three employers' association members and three of the union members voted unanimously against Goss.

In defense of its claim that the presence of an additional union member warrants vacating the arbitration awards, appellant cites *Kirkland v. Arkansas–Best Freight System,* 475 F.Supp. 180 (E.D.Ark.1979), *aff'd in pertinent part,* 629 F.2d 538 (8th Cir.1980), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 814 (1981). We find *Kirkland*'s facts very different. In *Kirkland,* the committee actually made the contested decision while it was improperly constituted. Moreover, numerous other irregularities contributed to the court's vacating the decision reached by the committee in that case, including the complete lack of participation in discussions by one of the members of the committee, the lobbying efforts of a labor relations employee of an interested company who approached two

---

**1.** The Union's counterpetition sought confirmation of a third arbitration award as well as the two awards Goss sought to vacate. Goss did not oppose the confirmation of the third award in the district court and does not appeal the confirmation in this court.

members of the committee in advance of the relevant meeting, and the ownership of stock in the employer by one of the members of the committee. By contrast, in the case before us, the actual decision was made by a board properly constituted according to the agreement: equal numbers of employer and union representatives voted. Moreover, Goss proffers no other relevant evidence suggesting any irregularities in the proceedings. As the board was otherwise properly composed and it is clear that an equal number of employers' association and union members reached the decision at issue, and did so unanimously, we do not believe that the mere presence of an extra union member during the arbitration discussions warrants vacation of the arbitration award.

### B.

■ Goss also challenges the LJAB's authority to determine the disputes presented to it on the ground that all the actions underlying the DeMatteis award and most of the actions underlying the Commercial Jobs Award occurred prior to the time period covered by the 1986–1989 Agreement under which the LJAB was convened. That agreement became effective on July 1, 1986, at the termination of the parties' 1983–1986 Agreement. Goss argues that because all of its actions regarding DeMatteis' employment occurred before that date, and because thirteen of the fourteen jobs at issue in the Commercial Jobs Award occurred before that date, these actions could not be arbitrated pursuant to the 1986–1989 Agreement.

Goss recognizes that conduct that occurred before the effective dates of the 1986–1989 Agreement could have been arbitrated pursuant to the terms of previous collective bargaining agreements, even after the expiration of these agreements. *See Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union,* 430 U.S. 243, 251, 97 S.Ct. 1067, 1071–72, 51 L.Ed.2d 300 (1977) (rejecting proposition that "termination of a collective-bargaining agreement automatically extinguishes a party's duty to arbitrate grievances arising

under the contract"). It argues, however, that the arbitration at issue was not convened under the prior agreements. While Goss relies on the opinion given by one member of the LJAB at the hearing that the hearing was convened pursuant to the 1986–1989 Agreement, the record indicates that the LJAB, as a body, subsequently considered the issue, noted that the relevant grievance procedures were identical in all relevant prior agreements, and unanimously decided that the LJAB was convened to hear and decide the grievances arising under the prior agreement as well as those arising under the later agreement. As the arbitration panel subsequently rejected the view that it was convened only under the 1986–89 Agreement, Goss may not rest its claim to the contrary on the statement of one arbitrator later rescinded by the Board as a whole.

■ Goss also argues that the panel had no authority to consider actions that occurred during the period of the 1983–1986 Agreement because the grievances were not filed within a reasonable time after the 1983–1986 Agreement's expiration. Goss relies on the Supreme Court's statement in *Nolde* that "we need not speculate as to the arbitrability of post-termination contractual claims which, unlike the one presently before us, are not asserted within a reasonable time after the contract's expiration." 430 U.S. at 255 n. 8, 97 S.Ct. at 1074 n. 8. However, as indicated by the Seventh Circuit's discussion of the rationale behind the *Nolde* passage in *Local 703, International Brotherhood of Teamsters v. Kennicott Bros. Co.,* 771 F.2d 300, 303 (7th Cir.1985), the Supreme Court's language refers to claims resulting from the employer's conduct occurring after the expiration of the collective bargaining agreement:

Whereas in *Nolde* the event triggering the severance-pay grievance (the closing of the plant) occurred four days after the expiration of the contract, here the events triggering the grievances (the discharge and the granting of retroactive pay increases) occurred more than six months after the Agreement expired. Although it may be reasonable to pre-

sume that parties intend to arbitrate grievances arising shortly after the expiration of a contract, the presumption weakens as the time between expiration and grievance events increases. A contrary holding would mean that parties to a collective-bargaining agreement would be presumed to intend that any dispute arising between them years or even decades after the expiration of the agreement would be arbitrable.

*Kennicott,* 771 F.2d at 303.

In both footnote 8 of *Nolde* and in *Kennicott* the relevant issue of timing concerned whether conduct occurring after the expiration of a collective bargaining agreement could be the subject of arbitration. *Accord Chauffeurs, Teamsters & Helpers, Local Union 238 v. C.R.S.T., Inc.,* 795 F.2d 1400, 1404 (8th Cir.) (analyzing footnote 8 in *Nolde* to apply to conduct occurring after expiration of agreement), *cert. denied,* 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986); *Graphic Communications Union, Local No. 2 v. Chicago Tribune Co.,* 794 F.2d 1222, 1226 (7th Cir.1986) (same). Here, the conduct giving rise to the grievance clearly occurred within the relevant period; only the grievance procedure was initiated after the expiration of the agreement. Under these circumstances, timeliness is governed by the grievance procedures of the 1983–1986 Agreement.[2] To reach any other conclusion would allow parties to breach with impunity collective bargaining agreements during the agreements' terms as long as they successfully covered their tracks so that the discovery of any breach was postponed until after the expiration of the particular agreement.

**C.**

In a related claim, Goss argues that the LJAB did not have authority to arbitrate the grievances because the Union failed to raise them within the requisite time limits established by the collective bargaining agreements. Goss recognizes that "procedural questions related to substantive issues that are arbitrable under the agreement are for the arbitrator to decide in the absence of a contrary provision." *Toyota of Berkeley v. Automobile Salesmen's Union, Local 1095,* 834 F.2d 751, 754 (9th Cir.1987), *cert. denied,* 486 U.S. 1043, 108 S.Ct. 2036, 100 L.Ed.2d 620 (1988). It argues, however, that section 7 of the grievance procedure removes that question from the arbitration panel's jurisdiction. Section 7 provides:

Failure to exercise the right of appeal at any step thereof within the time limit provided therefore shall void any right of appeal applicable to the facts and remedies of the grievances involved.

1986–1989 Agreement, art. X, § 7. Goss contends that on the basis of this provision the district judge was required to consider the timeliness of the Union's appeals to arbitration before confirming the arbitration awards, rather than simply accepting the LJAB's determination that the appeals were timely filed.

We addressed a similar argument in *Retail Delivery Drivers, Local 588 v. Servomation Corp.,* 717 F.2d 475 (9th Cir.1983). In that case, the relevant collective agreement provided that if neither party sought arbitration within a 72–hour time period, the matter was " 'deemed to have been settled in favor of the party against whom the grievance, dispute or controversy has been brought.' " *Id.* at 476 n. 1 (quoting the agreement). Respondent in that case argued that this provision, in combination with a provision of the Federal Arbitration Act stating that a court may compel arbitration only "in the manner provided in [the written] agreement," 9 U.S.C. § 4 (1976), made it necessary for the court to determine whether a petition for arbitration was timely filed before compelling arbitration. Relying on *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11

---

**2.** The 1983–1986 Agreement directs that grievances must be filed within 30 days of first knowledge of a breach of the agreement. 1983–1986 Agreement, art. X, § 1. The Union contends that the gap in time between the employer's allegedly wrongful actions and the Union's initiating grievance procedures stemmed from the employer's engaging in a cover-up that prevented the Union from learning of the employer's breach. The LJAB found the Union's grievance to be timely filed.

L.Ed.2d 898 (1964), and *International Union of Operating Engineers v. Flair Builders, Inc.,* 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), we held the issue of timeliness arbitrable because "when time limitations and other procedural requirements are made an express part of the arbitration agreement, they become part of the bundle of issues the parties consented to have decided by an arbitrator's special interpretative ability". *Retail Delivery,* 717 F.2d at 478.

*Retail Delivery* controls this case. Here, too, time limitations are made an express part of the arbitration agreement; issues in respect to them must be submitted to arbitration. Section 7 of the collective bargaining agreement, like the provisions cited in *Retail Delivery,* does not cut against this conclusion since it does not provide explicit language demonstrating that the parties to the collective bargaining agreement did not intend the arbitration panel to have authority to decide issues of timeliness. *See also John Wiley & Sons,* 376 U.S. at 556 n. 11, 555–59, 84 S.Ct. at 918 n. 11, 917–19 (issue of timeliness is to be decided by arbitrator notwithstanding collective bargaining agreement provision stating that "[t]he failure by either party to file the grievance within this [4–week] time limitation shall be construed and be deemed to be an abandonment of the grievance").

### D.

■ Goss next contends that the arbitration panel's awards were punitive and, accordingly, barred by the relevant collective bargaining agreements and the law of this circuit. The union argues persuasively that the bulk of the awards were compensatory, not punitive. To the extent that the awards were punitive, we find them permissible.

Both the 1983–1986 Agreement and the 1986–1989 Agreement state that the arbitration panel is

empowered to render such decisions and grant such relief to either party as [it] deem[s] necessary and proper, including

awards of damages or other compensation.

1983–1986 Agreement, art. X, § 5; 1986–1989 Agreement, art. X, § 5. In *Pullman Power Products Corporation v. Local 403, United Association of Journeymen,* 856 F.2d 1211 (9th Cir.1988), we recognized that the Supreme Court's decision in *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), requires us to review arbitration awards very deferentially:

[t]he *Misco* decision contains sweeping language mandating that courts may not reconsider the merits of an award even when the parties "allege that the award rests on errors of fact or on misinterpretation of the contract.... [A]s long as the arbitrator is even *arguably* construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision."

*Pullman,* 856 F.2d at 1212 (quoting *Misco,* 484 U.S. at 36–38, 108 S.Ct. at 369–71) (emphasis added in *Pullman* ). In this case, we cannot say that the broad grant of power to the LJAB contained in the clause quoted from the agreement would not even arguably include the power to make an award of punitive damages. *See International Ass'n of Heat & Frost Insulators, Local Union 34 v. General Pipe Covering, Inc.,* 792 F.2d 96, 100 (8th Cir.1986) (agreement clause stating board would "have the power to impose fines or other penalties" authorized punitive damage award); *Willoughby Roofing & Supply Co. v. Kajima Int'l, Inc.,* 598 F.Supp. 353, 357 (N.D.Ala. 1984) (rule incorporated by reference into collective bargaining agreement stating that "[t]he arbitrator may grant any remedy or relief which is just and equitable and within the terms of the agreement of the parties" authorized punitive damage award), *aff'd,* 776 F.2d 269 (11th Cir.1985).

### E.

■ Finally, Goss argues that the LJAB's decision should be reversed because the board was biased since the labor representatives on the board were Union

agents and the management representatives were employed by businesses in competition with Goss. Goss's argument is fundamentally flawed. Given that the collective bargaining agreement clearly provides that all appeals from unresolved grievances will be arbitrated by representatives of the Union and the local employers' association, which is traditionally composed of management representatives engaged in the sheet metal industry, it is difficult to imagine who else Goss would have expected to arbitrate its dispute. Goss received exactly what it bargained for. *Cf. Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 679 (7th Cir.) ("The parties to an arbitration choose their method of dispute resolution, and can ask no more impartiality than inheres in the method they have chosen."), *cert. denied,* 464 U.S. 1009, 104 S.Ct. 529, 78 L.Ed.2d 711 (1983).

■ Goss's argument that the fact that the union members on the LJAB voted to award damages to the Union demonstrates the LJAB's bias in favor of the Union is equally misconceived. According to Goss, "Local 104 has exclusive control over the so-called 'Local 104 Damage and Defense Fund'," and therefore, "[b]y ordering Goss to pay more than $70,000 ... to the Local 104 Damage and Defense Fund, the Local Joint Adjustment Board made an award in favor of its own members." However, Goss entered into the collective bargaining agreement knowing that Union members would be sitting on the arbitration panel hearing grievances brought by the Union. It should come as no surprise that the panel would award damages to the Union on finding a grievance meritorious in a case where establishing the identity of the particular individuals damaged was difficult. Such an award of damages to a union is both lawful and commonplace.

### F.

The Union requests attorney's fees incurred on appeal. Because not all of the arguments raised by Goss on appeal lacked merit, we deny the fee request. *See Glanzman v. Uniroyal, Inc.,* 892 F.2d 58, 61 (9th Cir.1989).

The decision of the district court is AFFIRMED.