In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-2993

NISSAN NORTH AMERICA, INC.,

*Petitioner-Appellee,*

*v.*

JIM M'LADY OLDSMOBILE, INC.,
d.b.a. JIM M'LADY NISSAN,

*Respondent-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 1290—**Ronald A. Guzmán**, *Judge.*

ARGUED JANUARY 16, 2002—DECIDED OCTOBER 3, 2002

Before BAUER, ROVNER, and WILLIAMS, *Circuit Judges.*

ROVNER, *Circuit Judge.* Jim M'Lady Nissan appeals from the district court's order compelling it to arbitrate a dispute concerning Nissan North America's announced intention to drop M'Lady as one of its dealers. Our doubts that Nissan produced sufficient evidence of arbitrability, coupled with M'Lady's lack of opportunity to introduce evidence rebutting arbitrability given the procedural posture in which the court decided the question, lead us to remand the case for further proceedings.

## I.

In 1992, Nissan and M'Lady entered a written "dealer agreement" that allowed M'Lady to operate as an authorized dealer of Nissan cars and trucks. The agreement was set to expire automatically on April 1, 1995, but the parties amended it in writing by way of "Amendment No. 4" on May 18, 1998. That amendment changed the dealer agreement's expiration date to May 1, 1999, and declared that "Binding Arbitration with JAMS/ENDISPUTE, an independent and professional agency providing arbitration services," would be the exclusive means of resolving any dispute "arising out of" the dealer agreement.

Although no other written agreements between Nissan and M'Lady are part of the record before us, the parties continued doing business well past the dealer agreement's May 1999 expiration date. Indeed, M'Lady sells Nissan cars to this day. However, the parties' relationship did deteriorate: Nissan sent M'Lady a series of letters informing it that Nissan considered it to have breached a provision of the dealer agreement requiring it to construct an exclusive Nissan showroom by a particular date, and on October 3, 2000, Nissan notified M'Lady by letter of its intent to "terminate" M'Lady as a dealer. M'Lady protested the termination before the Illinois Motor Vehicle Review Board on October 20, 2000.

On November 17, 2000, Nissan filed an arbitration demand with the arbitration administrator named in the dealer agreement and moved the Board to stay its proceedings pending arbitration. The Board tentatively denied Nissan's motion to stay and ordered the parties to begin discovery. M'Lady declined to participate in the arbitration, and the arbitrator decided to proceed anyway.

In February 2001, Nissan filed in federal district court a petition under the Federal Arbitration Act to compel arbitration of the "termination dispute" and enjoin the

Board proceedings. M'Lady responded on March 6 with a motion to dismiss or stay Nissan's petition under the *Colorado River* abstention doctrine in light of the parallel action pending before the Board, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), as well as an answer to the petition. Later that day, the district court issued an order giving M'Lady through March 15 "to respond to Nissan's memorandum in support of its petition to compel."

Nissan objected to M'Lady's "multiple filings" at a March 13 hearing before the district judge, arguing that M'Lady should be required to consolidate its arguments in favor of a stay and against arbitration into a single response. M'Lady, however, asked that its motion to dismiss be decided first and that its response to Nissan's supporting memorandum, then due on March 15, be "deferred until after a ruling" on the motion to dismiss. The court ultimately agreed to this procedure, noting that if it agreed with M'Lady's abstention argument it would not need to reach the merits of Nissan's petition to compel arbitration. The court decided to "isolate the issues" and so struck all prior briefing schedules and "all the other motions, objections and filings" in the case and set a deadline for Nissan to respond to M'Lady's motion to dismiss.

But instead of handling the motion and the petition separately, as it had indicated it would do in its oral ruling and briefing schedule, the district court issued an order on June 21 that denied M'Lady's motion to dismiss, stayed the Board proceedings, and summarily granted Nissan's petition to compel arbitration. The court concluded that the "termination dispute" was related to the dealer agreement that the parties agreed to arbitrate under Amendment No. 4. The district court later denied M'Lady's motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). M'Lady appeals.

**II.**

At the outset, we pause to emphasize that we have no difficulty with the district court's refusal to stay Nissan's petition to compel arbitration. Such stays are appropriate only in exceptional circumstances, *see Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 19 (1983), and M'Lady did not even bother to tailor its opening argument on this question to the demanding abuse-of-discretion standard of review. Nor do we see any problem with the district court's decision to temporarily stay the Board proceedings pending a final resolution of Nissan's petition. We part with the district court only in its handling of the petition itself.

M'Lady argues that the district court erred in compelling arbitration because the only contract in the record that contains an arbitration clause—the dealer agreement—expired by its own terms in May 1999. The parties continued doing business, however, and only later did the dispute over "termination" arise. Thus, M'Lady contends, the current "termination dispute" Nissan seeks to arbitrate must have arisen not under the expired contract, but instead under a subsequent contract. M'Lady further asserts that after the original agreement expired the parties formed an oral contract that did *not* contain an arbitration clause and that it would have introduced evidence of that contract had it been allowed to do so. M'Lady contends that the district court erred in compelling arbitration without allowing it to present this evidence, and we agree.

Nissan characterizes M'Lady's argument concerning expiration as a "defense to the enforcement" of the agreement containing the arbitration clause and asserts that where a broadly-worded arbitration clause creates a "presumption of arbitrability," any doubts concerning whether a particular "defense" falls within the scope of the

arbitration agreement should be resolved in favor of arbitration. But Nissan's position would make the contractual obligation to arbitrate limitless; once two parties entered a fixed-term contract with an arbitration clause any later dispute between the parties would be presumed arbitrable, with all disputes going to the arbitrator under the guise of "defenses to enforcement." Parties would thus be forced to commit to the arbitrator even questions they never intended to arbitrate. To remedy this potential problem, the Supreme Court held in *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 209 (1991), that the presumption of arbitrability does not fully apply in cases where the arbitration agreement is contained in an *expired* fixed-term contract. Instead, courts handling such cases must determine not only whether the parties entered an agreement to arbitrate *some* issues, but also whether the *particular* dispute in question falls within the scope of the arbitration agreement—even if that determination requires contract interpretation typically remitted to the arbitrator. *Id.* at 209; *see also CPR (USA) Inc. v. Spray*, 187 F.3d 245, 255 (2d Cir. 1999); *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).

Nissan also appears to misunderstand the significance of M'Lady's point about expiration: a contract that by its own terms expired in 1999 cannot possibly be the basis of the parties' current dealership arrangement, and thus the termination of the current relationship cannot, at least absent additional evidence, be said to relate in any way to the expired contract. That might be the case if, as Nissan contends, the original contract never expired because Nissan repeatedly "waived" the expiration date. But Nissan offers only letters it sent to M'Lady *offering* to extend the term and never explains whether or how M'Lady *accepted* those offers. Moreover, some of the letters to which Nissan points contain not offers to extend

the contract term, but offers by Nissan to forbear early termination of the contract based on M'Lady's purported breaches. Nissan also argues, inconsistently, it seems to us, that the original agreement *did* expire but the parties' "course of dealing" shows that they continued to "operate under" an identical agreement. These internal inconsistencies in Nissan's appellate position suggest that any agreement that might exist cannot be as "clear and unmistakable" as Nissan contends. Another problem is that Nissan points us to no written agreement other than the one that has expired, and agreements to arbitrate must be in writing. *See* 9 U.S.C. § 4; *see also*, *e.g.*, *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529 (7th Cir. 1996). M'Lady, in contrast, seeks to present evidence that the parties' current relationship is governed by an oral contract. Nissan counters with a one-line argument that M'Lady is "estopped" from introducing this evidence, but this assertion is undeveloped and unsupported by authority, and we consider it waived. M'Lady will be permitted to introduce this evidence on remand.

The district court's order compelling M'Lady to arbitrate is VACATED, and the case REMANDED for further proceedings outlined in this opinion. We leave to the district court the decision whether to continue in force its temporary stay of the Board proceedings. Because the district judge in this case reached the merits, Circuit Rule 36 shall apply on remand.

A true Copy:

    Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*