# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1971

_____

Express Scripts, Inc.,          *
         *
         Plaintiff - Appellee,          *
         *    Appeal from the United States
         v.          *    District Court for the
         *    Eastern District of Missouri.
Aegon Direct Marketing Services, Inc.,    *
         *
         Defendant - Appellant.          *

_____

Submitted: September 24, 2007
Filed:  February 13, 2008

_____

Before MURPHY, MELLOY, and SMITH, Circuit Judges.

_____

MURPHY, Circuit Judge.

Express Scripts, Inc. (ESI) brought this action against Aegon Direct Marketing Services, Inc. (Aegon) seeking a declaratory judgment that a 2000 oral agreement terminated an earlier agreement to arbitrate contractual disputes and injunctive relief against Aegon's demand for arbitration.  Aegon moved to dismiss or for a stay pending arbitration.  The district court[1] denied Aegon's motion, and it appeals.  We affirm.

_____

[1]The Honorable Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

On June 1, 1995 predecessors of Aegon and ESI entered into a pharmaceutical sales agreement (the 1995 Agreement), under which ESI's predecessor, Diversified Pharmaceutical Services, Inc. (Diversified), agreed to provide pharmacy benefit management services to Aegon's predecessor, Monumental General Insurance Group (Monumental). Aegon succeeded to Monumental's entire interest in the 1995 Agreement before ESI acquired Diversified on April 1, 1999. Section 9.5 of the 1995 Agreement is an arbitration provision which states that "[i]f any dispute relating to this Agreement arises between Diversified and Contractor [Monumental] which cannot be resolved through good faith negotiation, the dispute shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association [AAA]." AAA Rule 1, which was in effect when the parties' predecessors entered into the 1995 Agreement, states that "[t]hese rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration. . .is received by the AAA."

On January 26, 2000 ESI and Aegon amended the 1995 Agreement to change certain retail pricing terms. They also began negotiating a new pharmaceutical sales agreement under which ESI would continue to provide pharmacy benefit management services to Aegon. ESI claims that on March 28, 2000, the parties orally agreed to a new contract (the 2000 Agreement) and that they operated under its terms and pricing structure beginning June 1, 2000. Aegon claims on the other hand that the 2000 Agreement never went into effect and that the 1995 Agreement is the only contract between the parties. The only copy of a 2000 Agreement included in the record is not signed by either ESI or Aegon, and ESI does not dispute that no signed copy exists. The unsigned contract does not include an arbitration provision and states that it supersedes all preceding agreements.

In 2005 a dispute arose after Aegon audited ESI's billings and concluded that ESI had overbilled it by approximately $5 million. Aegon demanded repayment of the excess amounts, and ESI rejected the audit findings and refused to pay. Aegon

filed a demand for arbitration with AAA on September 8, 2006, attaching a copy of the arbitration provision in the 1995 Agreement (§ 9.5). At the time that AAA received Aegon's arbitration demand, its rules included one giving arbitrators the power to rule on their own jurisdiction even if any party objects to the existence, scope, or validity of the arbitration agreement. ESI responded to Aegon's arbitration demand by filing this declaratory judgment action in state court on September 22, 2006, seeking injunctive relief.

Aegon removed the case to federal court on October 10, 2006 and moved to dismiss ESI's motions under Fed. R. Civ. P. 12(b)(6) or to stay the motions pending arbitration pursuant to 9 U.S.C. § 3. After several months went by without a court hearing on the parties' motions, Aegon requested on February 8, 2007 that AAA move forward with arbitration. AAA advised the parties that it would proceed unless it received a contrary indication from the court. On February 28, 2007 ESI filed a motion for a temporary restraining order to enjoin the arbitration.

The district court heard arguments on the parties' motions on March 1, 2007, after which it denied Aegon's motion for dismissal or stay and dismissed ESI's motion for a restraining order as moot. The court cited AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 649 (1986), for the proposition that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." In its view nothing in the 1995 Agreement provided clear, unmistakable evidence that the parties had agreed to arbitrate the issues of whether a subsequent agreement superseded the original contract or whether a billing dispute would be subject to arbitration, and it was therefore for the court to determine arbitrability. Aegon appeals under 9 U.S.C. § 16(a)(1)(A), and we have jurisdiction to review the district court's order under 28 U.S.C. § 1294(1).

Aegon argues that where one party challenges the validity of an agreement as a whole, but does not expressly dispute the validity of an arbitration provision within it, that provision is severed and generally serves as clear, unmistakable evidence that the parties intended to arbitrate any dispute over the contract's validity. See, e.g., Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 449 (2006); Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967). ESI responds that it *does* explicitly challenge the continuing applicability of the earlier arbitration provision as well as the rest of the 1995 Agreement, which it says was superseded by a 2000 Agreement.

We review de novo a district court's denial of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), Broadus v. O.K. Industries, Inc., 226 F.3d 937, 941 (8th Cir. 2000), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party, Katun Corp. v. Clarke, 484 F.3d 972, 975 (8th Cir. 2007). In its petition for declaratory judgment and injunctive relief ESI alleged that the 2000 Agreement became effective and superseded the 1995 Agreement and facts which could support that allegation. The district court thus did not err in denying Aegon's motion to dismiss ESI's petition. See id.

A district court's denial of a motion to stay pending arbitration under 9 U.S.C. § 3 is also reviewed de novo. FSP, Inc. v. Société Générale, 350 F.3d 27, 30 (2d Cir. 2003); Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 779 (10th Cir. 1998); In re Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993); see also Enderlin v. XM Satellite Radio Holdings, Inc., 483 F.3d 559, 560 (8th Cir. 2007) (arbitrability of dispute based on contract interpretation is a legal question reviewed de novo). Unlike our review of a motion to dismiss, however, we need not accept either party's allegations as true but instead must review the evidentiary record to determine whether the § 3 movant has offered sufficient proof to "satisf[y] [the court] that the issue involved . . . is referable to arbitration under such

-4-

an agreement," 9 U.S.C. § 3.  If so, the motion for a stay pending arbitration should be granted.

In ruling on such a motion the district court does not determine the merits of the substantive issues since "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." AT & T, 475 U.S. at 649.  Aegon's very limited claim to the district court was that an arbitrator, not a court, should decide whether the 1995 Agreement was effective at the time AAA received Aegon's demand for arbitration and if it was, whether the billing dispute falls within the scope of the 1995 arbitration provision.  In light of these questions, the district court did not abuse its discretion by not addressing ESI's claim that the 1995 Agreement was terminated by the purported 2000 Agreement.

ESI argues that ignoring evidence of the validity of the 2000 Agreement improperly elevates the 1995 Agreement and other similar arbitration agreements to "eternal, immutable, and interminable" status, citing Nissan North America, Inc. v. Jim M'Lady Oldsmobile, Inc., 307 F.3d 601 (7th Cir. 2002).  In Nissan the parties' arbitration agreement had a fixed term, however, which expired before the demand for arbitration was filed.  To presume arbitrability under a plainly expired arbitration agreement "would make the contractual obligation to arbitrate limitless." Id. at 604.  In contrast, there is here no allegation that the 1995 Agreement expired on its own terms.  Instead ESI urges us to assume that the 1995 Agreement was terminated by the 2000 Agreement.  The basis for this presumption was said to be a written but unsigned copy of the purported contract, related correspondence with Aegon representatives, and allegations that the parties operated under the terms of such agreement.  The district court concluded that this evidence did not create a presumption that the 2000 Agreement superseded the earlier one, recognizing that both parties agree that the 1995 Agreement was valid and binding at some point in time but that any evidence that it is no longer effective goes to the underlying dispute between the parties.

The 1995 Agreement does contain an arbitration provision, and parties give up the right to have a court decide the merits of any dispute which they have agreed to arbitrate. First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 942 (1995). Congress enacted the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 et seq., in 1925 to "establish[] and regulat[e] the duty to honor" such arbitration agreements. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 n.32 (1983). Although the FAA applies to all arbitration agreements involving transactions in maritime or interstate commerce, see 9 U.S.C. § 2; Prima Paint, 388 U.S. at 405, arbitration disputes will be considered in federal court only when there is diversity of citizenship or an independent basis for federal jurisdiction. Moses H. Cone, 460 U.S. at 26 n.32. The FAA applies to the 1995 Agreement because the prescription drug plan in dispute involved interstate commerce, and the district court's jurisdiction was based on the diversity of the parties, 28 U.S.C. § 1332.

Before a district court may grant a motion to stay pending arbitration under 9 U.S.C. § 3, it "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement." Houlihan v. Offerman & Co., Inc., 31 F.3d 692, 696 (8th Cir. 1994) (requiring district court to apply this principle before granting motion to compel arbitration under 9 U.S.C. § 4); also Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004). Thus, "the question 'whether the parties have a valid arbitration agreement at all' is for the court, not the arbitrator, to decide." Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1331 (11th Cir. 2005), quoting Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2003); also McLaughlin Gormley King Co. v. Terminix Int'l Co., L.P., 105 F.3d 1192, 1193-94 (8th Cir. 1997).

The first threshold issue, the validity of the 1995 Agreement (exclusive of the dispute over its continuing viability), is easily resolved in favor of the district court's conclusion that the 1995 Agreement is presumptively valid and binding upon ESI and

Aegon. Under the FAA, a written arbitration agreement by itself or in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The parties do not dispute that the 1995 Agreement was valid and enforceable or that they are successors in interest to the rights and obligations in the 1995 Agreement. See United Computer Sys., Inc. v. AT & T Corp., 298 F.3d 756, 766 (9th Cir. 2002) (successor in interest by merger with original signatory); Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc., 293 F.3d 1023, 1029 (7th Cir. 2002).

The second issue, "whether the specific dispute falls within the scope of [the] agreement," must also be resolved by a court to ensure that a party is not unfairly stripped of its right to a judicial decision about a matter it had not agreed to arbitrate. See First Options, 514 U.S. at 945 (although FAA evinces Congress's strong preference for arbitration, our system will not force parties "to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide"). The specific dispute here involves the scope of the arbitration provision and whether it shows the parties' desire to have an arbitrator resolve the arbitrability issue.

Arbitration is a matter of contract, and "arbitrators derive their authority to resolve disputes only because the parties have agreed" to it. AT & T, 475 U.S. at 648-49. Where there is a valid, broad arbitration clause like the one here, a court presumes arbitrability of any particular substantive dispute and resolves any doubts in favor of coverage "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Id. at 650. This presumption of arbitrability does not exist, however, if the parties were silent about who should decide arbitrability, for "courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." Id. at 649; see McLaughlin Gormley, 105 F.3d at 1194 (party could not be forced to arbitrate the issue of arbitrability because nothing in arbitration clause

or any other contract provision "evidenced the parties' intent to give the arbitrator power to determine arbitrability").

Aegon argues that the arbitrability dispute must be submitted to an arbitrator according to Buckeye, 546 U.S. 440, and Prima Paint, 388 U.S. 395. The Buckeye line of cases stands for the proposition that where the parties dispute the validity of their contract as a whole, but not the validity or existence of the arbitration provision, the arbitration provision is severed from the rest of the agreement and the issue of the contract's validity is decided by an arbitrator. Buckeye, 546 U.S. at 449; Prima Paint, 388 U.S. at 403-04. Unlike the facts of those cases, ESI specifically requested in its petition for declaratory judgment that the court declare that the 1995 Agreement "was terminated" *and* "that there is no agreement to arbitrate disputes for claims arising after June 1, 2000." It is clear that ESI explicitly disputes the ongoing existence of the arbitration provision in the 1995 Agreement, and the district court correctly concluded that Prima Paint and Buckeye have no application here.

A dispute like the one here – over whether the parties agreed to arbitrate – will be resolved by the district court "[u]nless the parties clearly and unmistakably provide otherwise." AT & T, 475 U.S. at 648; see also First Options, 514 U.S. at 944; McLaughlin Gormley, 105 F.3d at 1194. At issue in AT & T was whether the parties had agreed to arbitrate a grievance filed under a collective bargaining agreement. The Supreme Court concluded that the question of whether a collective bargaining agreement had created a duty for the parties to arbitrate the particular grievance was "undeniably an issue for judicial determination" unless the parties unmistakably agreed to arbitrate the issue of arbitrability. AT & T, 475 U.S. at 649.

In McLaughlin Gormley, we affirmed the district court's denial of Terminix's motion to compel arbitration under 9 U.S.C. § 4. Since the parties had not clearly and unmistakably "agreed to submit the arbitrability question itself to arbitration," the district court was required to decide the arbitrability question "just as it would decide

any other question that the parties did not submit to arbitration, namely, independently." 105 F.3d at 1193, citing First Options, 514 U.S. at 943. To hold otherwise "might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide." First Options, 514 U.S. at 945. Because the 1995 Agreement does not include an express statement of the parties' intent to arbitrate questions of arbitrability, the district court did not err in concluding that the arbitrability issue must be resolved by a court in the same manner that any other dispute between the parties which they had not specifically agreed to arbitrate would be resolved.

During oral argument Aegon asserted that the parties' incorporation of the AAA rules into the arbitration provision of the 1995 Agreement was clear, unmistakable evidence of their intent to arbitrate their arbitrability dispute. In support of this contention it pointed out that the parties had agreed in 1995 to "binding arbitration in accordance with the rules of the American Arbitration Association" and that Rule 1 then provided that the rules current at the time an arbitration demand is received are to apply. Among the rules in effect in September 2006 when AAA received its demand for arbitration was one giving the arbitrator power to determine his or her jurisdiction, i.e., to determine whether a dispute is arbitrable. See, e.g., Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 211 (2d Cir. 2005).

Because Aegon failed fully to discuss this contention in the district court or in its appeal briefs and because our circuit has never directly addressed the effect of the AAA jurisdictional rule on arbitrability disputes, Aegon's argument is waived and we decline to address it today. See Fed. R. App. Procedure 28(a)(9)(A) (appellant's brief must include contentions, reasons for them, and citations to authorities and parts of record on which appellant relies); Twin Cities Galleries, LLC v. Media Arts Group, Inc., 476 F.3d 598, 602 n.1 (8th Cir. 2007) (argument not briefed but raised first at oral argument is waived); see also Mississippi River Corp. v. FTC, 454 F.2d 1083,

-9-

1093 (8th Cir. 1972) ("proper judicial administration" requires that appellant raise issues in opening brief).

For these reasons we affirm the judgment of the district court.

_____